# Exhibit A to Forfeiture Complaint

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x
                                   :

UNITED STATES OF AMERICA

                                   :    <u>INFORMATION</u>

       - v. -

                                   :    21 Cr. 175

RAHN+BODMER CO.,

                                   :

          Defendant.    :

- - - - - - - - - - - - - - - - - x

## COUNT ONE
(Conspiracy)

The United States Attorney charges:

**<u>Rahn+Bodmer Co.</u>**

1. At all times relevant to this Information:

      a. RAHN+BODMER CO. ("R+B"), the defendant, was a private bank located in Switzerland that provided private banking, asset management, and other services to individuals and entities around the world, including U.S. taxpayers in the Southern District of New York.

      b. R+B was structured as a partnership, which included five general partners who had both managerial and client service responsibilities (the "General Partners").

      c. R+B employed client advisors, who provided advice to, and opened and maintained accounts for, clients of

R+B.

## Obligations of U.S. Taxpayers
## With Respect to Foreign Financial Accounts

2. At all times relevant to this Information:

a. U.S. citizens and residents who had income in any one calendar year in excess of a threshold amount ("U.S. taxpayers") were required to file a U.S. Individual Income Tax Return, Form 1040 ("Form 1040"), for that calendar year with the Internal Revenue Service ("IRS"). On the Form 1040, U.S. taxpayers were obligated to report their worldwide income, including income earned in foreign bank accounts.

b. U.S. taxpayers also had an obligation to report to the IRS on Schedule B of the Form 1040 whether they had a financial interest in, or signature authority over, a financial account in a foreign country during the relevant calendar year by checking "Yes" or "No" in the appropriate box and identifying the country where such account was maintained.

c. In addition, U.S. taxpayers who had a financial interest in, or signature or other authority over, one or more financial accounts in a foreign country with an aggregate value of more than $10,000 at any time during a particular calendar year were required to file with the Department of Treasury a Report of Foreign Bank and Financial

2

Accounts, FinCEN Form 114 (the "FBAR," formerly known as Form TD F 90-22.1) on or before June 30 of the following year. In general, the FBAR required that the U.S. taxpayer filing the form identify the financial institution with which the financial account was held, the type of account (either bank, securities, or other), the account number, and the maximum value of the account during the calendar year for which the FBAR was being filed.

    d. The regulations relating to the required disclosure of foreign bank accounts specifically precluded U.S. taxpayers from having foreign accounts nominally held by sham corporate structures as a means of avoiding disclosure. Specifically, as set forth in Title 31, Code of Federal Regulations, Section 1010.350(e)(3):

> A United States person that causes an entity, including but not limited to a corporation, partnership, or trust, to be created for a purpose of evading this section [requiring generally the disclosure of offshore financial accounts containing over $10,000 and over which a U.S. taxpayer has signature or other authority] shall have a financial interest in any bank, securities, or other financial account in a foreign country for which the entity is the owner of record or holder of legal title.

    3. As used in this Information, "undeclared account" refers to a financial account held or beneficially owned by an individual subject to U.S. tax and maintained in a foreign

3

country that has not been reported by the individual account holder or beneficial owner to the U.S. government on a Form 1040 or FBAR as required.

### Overview of the Conspiracy

4. From at least in or about 2004 up through and including in or about 2012, numerous U.S. taxpayer-clients conspired with R+B, the defendant, and others known and unknown, to defraud the United States, to conceal from the IRS the existence of bank accounts held by U.S. taxpayer-clients at R+B and the income earned in these accounts, to file false tax returns, and to evade U.S. taxes on income generated in the undeclared accounts. At its peak in or around 2007, R+B conspired with U.S. taxpayer-clients to hide approximately $550 million in assets from the IRS in accounts at R+B.

### Means and Methods of the Conspiracy

5. Among the means and methods by which R+B, the defendant, and its co-conspirators carried out the conspiracy were the following:

    a. R+B opened and managed for U.S. taxpayer-clients accounts at R+B that were not reported to the IRS on Forms 1040, FBARs, or otherwise, and the income from which was also not reported to the IRS.

    b. R+B opened and maintained "numbered" or

4

"pseudonym" accounts for numerous U.S. taxpayer-clients to ensure that the U.S. taxpayer-clients' names would not appear on bank documents relating to their accounts and thereby reduce the risk that U.S. tax authorities would learn the identities of the U.S. taxpayer-clients.

    c. R+B assisted U.S. taxpayer-clients in opening and maintaining undeclared accounts held in the name of sham entities, that is, structures that had no business purpose, in order to conceal the U.S. taxpayer-clients' beneficial ownership of the account assets.

    d. R+B agreed to hold bank statements and other records relating to accounts of U.S. taxpayer-clients, rather than send them to the U.S. taxpayer-clients in the United States, which helped ensure that documents reflecting the existence of the accounts remained outside the United States and beyond the reach of U.S. tax authorities.

    e. R+B allowed U.S. taxpayer-clients and third-party asset managers to make structured withdrawals by checks from undeclared accounts in amounts of less than $10,000, in an attempt to conceal transactions from U.S. authorities.

    f. R+B offered its clients stored-value debit cards issued by an independent service provider, which allowed U.S. taxpayer-clients to use the funds in their undeclared

5

accounts at R+B.

g.  R+B permitted several U.S. taxpayer-clients to make deposits into undeclared accounts through intermediaries.

h.  After Liechtenstein and the United States signed a Tax Information Exchange Treaty ("TIEA"), under which Liechtenstein agreed to provide the United States with access to certain bank and other information needed to enforce U.S. tax laws, R+B transferred undeclared assets of several U.S. taxpayer-clients from accounts held in the names of sham foundations organized under the laws of Liechtenstein to new accounts held in the names of new sham foundations organized under the laws of Panama in an effort to further conceal the U.S. taxpayer-accounts.

i.  Following the February 2009 public announcement of the deferred prosecution agreement between UBS AG ("UBS"), another Swiss bank, and the United States Department of Justice, and the fact that Liechtenstein would provide account records to the IRS, R+B opened sham "escrow accounts" that facilitated the transfer of undeclared assets of U.S. taxpayer-clients that had been converted to gold and other precious metals, to a vault at UBS.  R+B opened the escrow accounts on behalf of Edgar Paltzer ("Paltzer"), a Swiss

6

attorney and co-conspirator not named as a defendant herein.

j. On occasion, R+B opened accounts for U.S. taxpayer-clients who were exiting UBS and other Swiss banks, and allowed these U.S. taxpayer-clients to continue to conceal their undeclared assets at R+B.

k. R+B helped U.S. taxpayer-clients to repatriate funds to the United States in a manner designed to ensure that U.S. authorities did not discover these undeclared accounts.

l. R+B, through a General Partner and a client advisor, made regular visits to the United States to solicit, open, and service undeclared accounts of U.S taxpayer-clients.

m. Various U.S. taxpayer-clients of R+B, including taxpayer-clients in New York, New York, filed false Forms 1040 that failed to report their interest in, and income earned from, their undeclared R+B accounts; evaded income taxes due and owing; and failed to file FBARs identifying their undeclared accounts.

**Statutory Allegations**

6. From at least in or about 2004 up through and including in or about 2012, in the Southern District of New York and elsewhere, R+B, the defendant, together with others known and unknown, willfully and knowingly did combine, conspire,

7

confederate, and agree together and with each other to defraud the United States of America and an agency thereof, to wit, the IRS, and to commit offenses against the United States, to wit, violations of Title 26, United States Code, Sections 7206(1) and 7201.

    7. It was a part and an object of the conspiracy that R+B, the defendant, together with others known and unknown, willfully and knowingly would and did defraud the United States of America and the IRS for the purpose of impeding, impairing, obstructing, and defeating the lawful governmental functions of the IRS in the ascertainment, computation, assessment, and collection of revenue, to wit, federal income taxes.

    8. It was further a part and an object of the conspiracy that various U.S. taxpayer-clients of R+B, the defendant, together with others known and unknown, willfully and knowingly would and did make and subscribe returns, statements, and other documents, which contained and were verified by written declarations that they were made under the penalties of perjury, and which these U.S. taxpayer-clients, together with others known and unknown, did not believe to be true and correct as to every material matter, in violation of Title 26, United States Code, Section 7206(1).

    9. It was further a part and an object of the

conspiracy that R+B, the defendant, together with others known and unknown, willfully and knowingly would and did attempt to evade and defeat a substantial part of the income tax due and owing to the United States of America by certain of R+B's U.S. taxpayer-clients, in violation of Title 26, United States Code, Section 7201.

### Overt Acts

10. In furtherance of the conspiracy and to effect the illegal objects thereof, R+B, the defendant, and others known and unknown, including R+B General Partners and client advisors acting within the scope of their employment with R+B, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

    a. On multiple occasions until in or about 2007, an R+B General Partner (the "R+B General Partner") met with a U.S. taxpayer-client in Delray Beach, Florida and New York, New York, to discuss the U.S. taxpayer-client's undeclared account at R+B and to review account statements related to the account.

    b. On or about August 24, 2007, Martin Dunki ("Dunki"), a R+B client advisor and co-conspirator not named as a defendant herein, and Paltzer, at the request of a U.S. taxpayer-client, arranged to transfer approximately $100,000

9

from an undeclared account held by the U.S. taxpayer-client at R+B to a diamond dealer in New York, New York.

   c. On or about December 18, 2008, Dunki arranged to transfer the undeclared assets of two U.S. taxpayer-clients of R+B from an account at R+B held by a sham Liechtenstein foundation to a new account held at R+B by a sham Panamanian foundation.

   d. On or about April 29, 2009, the R+B General Partner, a U.S. taxpayer-client of R+B, and Paltzer, met in Switzerland (the "April 2009 Meeting") to discuss the future of the U.S. taxpayer-client's undeclared account at R+B in light of the public news that UBS had been investigated by United States law enforcement authorities for helping U.S. taxpayers maintain undeclared accounts. The outcome of the April 2009 Meeting was that the U.S. taxpayer-client opted to empty his undeclared account at R+B of its assets by slowly moving the assets out of Switzerland to Canada and Hong Kong.

   e. In or about August 2009, as a result of the investigation of UBS, Dunki, Paltzer, and others known and unknown, took steps to further conceal the undeclared assets of several U.S. taxpayer-clients at R+B by using these assets to purchase gold and other precious metals; causing the gold, other precious metals, and cash to be transferred into newly opened

10

escrow accounts at R+B in Paltzer's name; and then depositing the gold, other precious metals, and cash into a vault rented at UBS, where they were kept for the benefit of the U.S. taxpayer-clients.

    f. On or about May 6, 2010, Dunki had gold coins delivered to Paltzer to store at a vault at UBS for the benefit of a U.S. taxpayer-client.

    (Title 18, United States Code, Section 371.)

*Audrey Strauss*

_____
AUDREY STRAUSS
United States Attorney

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

RAHN+BODMER CO.,

Defendant.

**INFORMATION**

21 Cr.

(18 U.S.C. § 371.)

AUDREY STRAUSS
United States Attorney.